UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x
SORAIDA BATISTA and OSCAR PEREZ,                  :
                                                  :
                        Plaintiffs,               :
                                                  :        **MEMORANDUM &**
        -against-                                 :        **ORDER DENYING**
                                                  :        **MOTION TO DISMISS**
UNITED STATES OF AMERICA,                         :
                                                  :        3:23-CV-1545 (VDO)
                        Defendant.                :
------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

　　When Soraida Batista first complained of a mass in her right breast, the nurse midwife

at StayWell Health Center sent her home without ordering additional testing. A year later,

Soraida Batista was diagnosed with breast cancer. She and her husband, Oscar Perez, bring

two claims against the United States: medical malpractice under the Federal Tort Claims Act,

28 U.S.C. § 2671, *et seq.*, and loss of services. The Government now moves to dismiss the

complaint for failure to state a claim. For the reasons explained below, the Court **DENIES** the

motion to dismiss and orders Plaintiffs to file an amended complaint.

## I.　　BACKGROUND

### A.　　Factual Background[1]

　　The Court accepts as true the allegations in the complaint and draws all

reasonable inferences in Plaintiffs' favor for the purposes of deciding the motion to dismiss.

　　On September 4, 2019, Plaintiff Soraida Batista ("Batista") visited StayWell Health

Center ("StayWell"), a health center in Waterbury, Connecticut, that receives federal funds.[2]

---

[1] As explained below, the Court considers the complaint as well as Batista's medical records.

[2] Compl., ECF No. 1, ¶ 5.

She complained of a mass in her right breast.[3] Susan Alward ("Alward"), a nurse midwife at StayWell, examined Batista and concluded that the mass in question was a fibrocystic change.[4] Alward ordered no further testing.[5] On June 17, 2020, Batista returned to StayWell, complaining of the same lump in her right breast.[6] She thought the mass had grown in the intervening months.[7] Alward again concluded that the mass was a fibrocystic change, but she also ordered a bilateral ultrasound on a non-urgent basis.[8]

On July 31, 2020, Batista visited Saint Mary's Hospital in Waterbury for the ultrasound examination.[9] She also underwent mammograms that same day.[10] These examinations revealed two mass lesions, and the radiologist who reviewed the results recommended a biopsy.[11] On August 4, 2020, due to the abnormal mammograms and ultrasound, Alward referred Batista to Drs. Beth Sieling and Nicole Sookhan at the Breast and Oncology Center.[12] On August 26, 2020, Batista met with Dr. Sookhan, who explained the biopsy procedure and its risks.[13] Batista completed the biopsy at Saint Mary's Hospital that same day.[14] On

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.* ¶ 6.

[7] *Id.*; Pl. Ex. B, ECF No. 31-1, at 7.

[8] Pl. Ex. B at 7–8.

[9] Gov. Ex. A, ECF No. 22, at 4.

[10] Compl. ¶ 7; Gov. Ex. B, ECF No. 22, at 6.

[11] Compl. ¶ 7; Gov. Ex. A at 4; Gov. Ex. B at 6.

[12] Gov. Ex. D, ECF No. 22, at 17.

[13] Gov. Ex. E, ECF No. 22, at 24.

[14] Gov. Ex. C, ECF No. 22, at 11.

September 9, 2020 Dr. Sookhan went over the biopsy results with Batista and informed her of the diagnosis: cancer.[15] Several months of chemotherapy left Batista cancer-free.[16] In February 2021, she underwent a double-mastectomy at Saint Mary's Hospital, and she continued to receive follow-up care at the Breast and Oncology Center, due to complications, well into 2021.[17]

### B.    Administrative and Procedural History

On August 29, 2022, Plaintiffs presented their administrative tort claim to the Department of Health and Human Services ("DHHS") by filing a completed SF-95 form.[18] Plaintiffs stated that StayWell and its employees committed medical malpractice and were negligent by "failing to test" Batista for cancer, failing "to perform tests to diagnose her breast cancer," and failing "to treat her breast cancer when it should have been earlier diagnosed and treated[.]"[19] On June 21, 2023, DHHS denied the administrative tort claim.[20]

On November 27, 2023, Plaintiffs filed their complaint against the United States, bringing claims for (1) medical malpractice "for failure to timely and properly diagnose, manage and treat" Batista's cancer and (2) loss of services.[21] In the complaint, Plaintiffs

---

[15] *Id.* at 15.

[16] Gov. Ex. G, ECF No. 22, at 33.

[17] *Id.* at 30; Gov. Ex. H, ECF No. 22, at 40.

[18] Gov. Ex. I, ECF No. 22, at 46–48.

[19] *Id.* at 47.

[20] Gov. Ex. J, ECF No. 22, at 50–51.

[21] *See generally* Compl.

alleged that StayWell was responsible for Batista's diagnosis and cancer treatment.[22] They also suggested that StayWell employed Dr. Sookhan.[23]

Following a pre-filing conference before this Court, Defendant moved for dismissal on July 19, 2024.[24] The Court granted Defendant's motion to seal exhibits containing sensitive medical information.[25] Plaintiffs filed their opposition brief on September 17, 2024,[26] and Defendant filed its reply on October 1, 2024.[27]

## II.    <u>LEGAL STANDARD</u>

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss, the Court must accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor.

---

[22] *Id.* ¶¶ 12–14.

[23] *Id.* ¶¶ 17, 19.

[24] Def. Mot., ECF No 20; Def. Mem, ECF No. 20-1.

[25] ECF No. 23.

[26] Pl. Opp., ECF No. 31.

[27] Reply, ECF No. 32.

*See Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014). The Court must then determine whether those allegations "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted). The Court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, a court may consider documents "attached to the complaint, incorporated [] by reference, integral to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (cleaned up) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). A document is only "integral" to the complaint if a plaintiff had "(1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Benny v. City of Long Beach*, No. 20-CV-1908, 2021 WL 4340789, at *10 (E.D.N.Y. Sept. 23, 2021); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (holding that a document is integral to the complaint if the latter "relies heavily" on the former). And even if a document is "integral" to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

## III.    <u>DISCUSSION</u>

Defendant asks the Court to dismiss the complaint for two reasons: first, it argues that Plaintiffs' claims are time-barred because they failed to file their administrative tort claim within two years of the date that their claims accrued; second, it argues that Plaintiffs have not

made out a claim that a federal employee failed to "diagnose, manage, or treat" Batista. [28] The Court addresses these arguments in order.

### A.    Extraneous documents

The Court must first decide a threshold issue—whether it can consider the extrinsic materials supplied by Plaintiffs at this stage in the litigation. Plaintiffs filed two affidavits and two declarations alongside their opposition briefing. The two affidavits, written by Batista and Plaintiff Oscar Perez, provide factual detail about Batista's visits to StayWell and her diagnosis. In their two declarations, Dr. Hirschman and Dr. Luciana explain the standard of care in evaluating a breast mass and the steps leading to a formal cancer diagnosis.[29] Plaintiffs ask the Court to consider these materials because they are "central" to the complaint.[30]

The Court will not consider Plaintiffs' affidavits or declarations at this stage in the litigation. Plaintiffs could not have relied on their *own* affidavits when drafting the Complaint. The affidavits give a sharper picture of the complaint's allegations, but courts generally decline to consider extraneous evidence that provides factual enhancement on a motion to dismiss. *See, e.g., Kaplan v. Wings of Hope Residence, Inc.*, No. 18-CV-02972, 2018 WL 6437069 at *4 (E.D.N.Y. Dec. 7, 2018).  Nor did Plaintiffs rely heavily on the declarations of Drs. Hirschman and Luciana. Plaintiffs assert that their "opinions . . . , upon which their declarations are based, were in Plaintiff's [sic] possession and were relied on in drafting the complaint."[31] However, courts in the Second Circuit require a closer tie between an extraneous document

---

[28] Def. Mem. at 6–7.

[29] Pl. Ex. E; Pl. Ex. F, ECF No 31-1, at 45–53.

[30] Pl. Opp. at 16.

[31] Pl. Opp. at 16.

and the complaint. In drafting a complaint, the plaintiff must rely on the document, not the opinions underpinning the document. Here, the complaint "neither quotes from nor mentions" these declarations, and so it fails to clear the bar. *See Gentile v. Touro Law Center*, No. 21-CV-1345, 2023 WL 2574441, at *4 (E.D.N.Y. Mar. 20, 2023); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (S.D.N.Y. 2006) ("In most instances where [the integral-to-complaint] exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls[.]"). Even putting this issue aside, the Court cannot conclude that "no dispute exists" as to the authenticity or accuracy of the declarations. *See Faulkner*, 463 F.3d at 134.

The Court will, however, consider Batista's medical records.[32] The parties appear to agree that the medical records are incorporated by reference into the complaint.[33] The Court agrees. In the complaint, Plaintiffs refer to Batista's specific diagnosis, as well as the procedures that she underwent in 2020. The Court concludes that Plaintiffs relied on these records in drafting the pleading. *See Xiao Qing Liu v. N.Y. State Dep't of Health*, No. 16-CV-4046, 2017 WL 3393944, at *4 (S.D.N.Y. Aug. 7, 2017); *Picarella v. United States*, No. 22-CV-4983, 2024 WL 1435744, at *1 (E.D.N.Y. Apr. 3, 2024).

---

[32] The Court declines to exercise its discretion to "convert" this motion to dismiss to a motion for summary judgment. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material."(cleaned up).). The parties have not yet initiated discovery, so the case is not ripe for summary judgment disposition. *See Brown v. Marriott Int'l, Inc.*, No. 14-CV-5960, 2017 WL 4484194, at *13 (E.D.N.Y. Sept. 29, 2017).

[33] Def. Mem. at 10 n.1; Pl. Opp. at 10.

B.    **Timeliness of Claims under the FTCA**

Defendant argues that Plaintiffs failed to submit their administrative tort claim within the two-year window established by the FTCA. In its view, the claims are therefore time-barred and subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To resolve this dispute, the Court must determine whether the malpractice claim accrued before August 29, 2020, that is, more than two years before Plaintiffs submitted their administrative tort claim to the DHHSA.[34] As explained below, the Court concludes that Plaintiffs filed their administrative tort claim within the two-year window.

The FTCA "provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal government officers or employees acting within the scope of their office or employment." *Moore v. United States*, No. 1:19-CV-9760, 2019 WL 5634679, at *1 (S.D.N.Y. Oct. 31, 2019) (citing 28 U.S.C. § 1346(b)(1)). Under the Federally Supported Health Centers Assistance Act of 1992 and 1995, Congress extended medical malpractice coverage to community health centers that receive funds under Section 330 of the Public Health Service Act. *See* 42 U.S.C. § 233(g)–(n). Before suing the United States under the FTCA in district court, a claimant must exhaust her administrative remedies by filing an administrative claim with the relevant federal entity. *See* 28 U.S.C. § 1346(b)(1).

---

[34] In their complaint, Plaintiffs suggest that they filed their administrative claim with the DHHS on August 23, 2022. (Compl. ¶ 3.) However, they concede in their opposition briefing that they filed the claim on August 29, 2022. (Pl. Opp. at 8.) The Court will therefore assume that Plaintiffs filed their claim with the DHHS on August 29, 2022.

Of relevance here, if a claimant does not present her claim to the agency "within two years after such claim accrues," the tort claim is "forever barred[.]" *Id.* § 2401(b).[35]

State law governs the United States' liability under the FTCA, but federal law determines the accrual date of an FTCA claim. *See A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139 (2d Cir. 2011). Generally, an FTCA claim accrues "at the time of injury," *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998), unless the plaintiff "would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted," *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008). Thus, in medical malpractice cases, "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts" of the injury *and* its cause. *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982). In other words, a plaintiff must have "notice that the cause of [her] injury 'is in the government's control[.]'" *Donely*, 518 F.3d at 178 (citing *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985)). This rule, more forgiving than the usual one, "protects" a plaintiff who is "experiencing the latent effects of a previously unknown injury" or "struggling to uncover the underlying cause of [her] injuries[.]" *Castillo*, 656 F.3d at 140.

Defendant contends that the present case is not one of the "exceptional" ones requiring application of the diligent-discovery rule.[36] In Defendant's view, Batista did not suffer from a "hidden injury."[37] Instead, she was aware of the "possibility of abnormal breast tissue" before

---

[35] Once the agency sends a final denial of the administrative claim to the claimant, she has six months to initiate her action in federal court. 28 U.S.C. § 2401(b). This six-month window is not at issue in the present case.

[36] Def. Mem. at 18–19.

[37] *Id.* at 19.

her first appointment in 2019.[38] In their opposition briefing, Plaintiffs argue that the diligent-discovery rule applies to this case because the injury was "unknown" or "inherently unknowable at the time it occur[red]."[39]

Before the Court can address these arguments, it must first pinpoint the injury in this case. Despite Plaintiffs' suggestions to the contrary, the injury here is not the breast cancer itself.[40] Plaintiffs' claims flow from Alward's failure to refer Batista for additional testing in 2019, when Batista first complained of a mass in her right breast. Plaintiffs do not allege that Alward caused the cancer; instead, they suggest that Alward's malpractice caused the cancer's growth throughout the following year. Thus, in the Court's estimation, the injury must be the growth of the cancer between September 2019 and June 2020, at the earliest, and any additional complications resulting from that delay and the decision to order further testing on a non-stat basis. *See Torres v. United States*, No. 12-CV-6011, 2014 WL 4805035, at *5 & n.7 (E.D.N.Y. Sept. 26, 2014) (*Torres I*) (finding that a plaintiff's injury was the progression of her condition due to a physician's failure to begin treatment), *vacated and remanded on other grounds*, 612 F. App'x 37 (2d Cir. 2015) (*Torres II*); *Williams v. United States*, No. 03-CV-9909, 2007 WL 951382, at *6 (S.D.N.Y. Mar. 22, 2007) ("[T]the injury in this case is not the cancer itself, but its 'grow[th]' after Bronx VA failed to diagnose it[.]").

---

[38] *Id.* at 19.

[39] Pl. Opp. at 17.

[40] Defendant seems to suggest that the injury is the failure to refer. (Def. Mem. at 16.) But the injury is not Alward's inaction; it is instead the medical consequences of the delayed referral. Batista did not have notice of those consequences in June 2020, when Alward reversed course and ordered additional testing.

The Court will apply the diligent-discovery rule to the present case. Assuming that Batista's injury is the growth of her cancer from September 2019 to at least June 2020, Batista had little reason to suspect that injury as early as 2019. In fact, Alward assured her patient that the mass in her right breast was "fibrocystic changes."[41] Batista would therefore have had "difficulty discerning the fact or cause of injury at the time it was inflicted." *Donely*, 518 F.3d at 177. Indeed, other courts have applied the diligent-discovery rule in similar circumstances. In *Picarella*, for instance, the plaintiff reported a variety of symptoms—including nocturia[42] and later, redness in his urine—to doctors at the Veterans Administration ("VA") in 2017 and 2019, but it was only in December 2020 that they conducted a prostate biopsy, which revealed the plaintiff's cancer. 2024 WL 1435744, at *2–3. Though the plaintiff had discussed his symptoms with VA doctors for several years, the court applied the diligent-discovery rule to his claims. *Id.* at *5; *see also Black v. United States*, No. 20-CV-70, 2020 WL 5939745, at *3-4 (D. Vt. Oct. 6, 2020) (applying the diligent-discovery rule though plaintiff had complained of gastrointestinal symptoms for several years). Like Picarella, Batista was worried about her health and reported symptoms to a medical professional, who allegedly deviated from the standard of care. Defendant contends that the injury was neither hidden nor unknown because Batista was aware of the mass and monitoring its growth.[43] The Court cannot credit such an argument. A patient who notices a symptom is not, by extension, aware of the "fact" of her injury. *Donely*, 518 F.3d at 177; *see Augustine v. United States*, 704 F.2d 1074, 1079 (9th Cir.

---

[41] Pl. Ex. A, ECF No. 31-1, at 5.

[42] In medical parlance, nocturia means "[w]aking up more than once each night to pass urine." Mayo Clinic, Frequent Urination Definition, https://www.mayoclinic.org/symptoms/frequent-urination/basics/definition/sym-20050712 (last visited March 4, 2025).

[43] Def. Mem. at 18–19.

1983) (rejecting the government's argument that because a plaintiff "was aware of the bump on his palate" when doctors failed to diagnose him, he was also aware of his injury at that time).

Applying the diligent-discovery rule to the present case, the Court must now determine whether the claim accrued before or after August 29, 2020. Defendant argues that Batista had sufficient notice of Alward's possible negligence by August 26, 2020—after all, Batista had undergone an ultrasound, mammogram, and biopsy by then, so she could have reasonably concluded that Alward should have referred her to a doctor in September 2019.[44] The diligent-discovery test, however, delays accrual until the plaintiff has discovered (or with reasonable diligence should have discovered) "the critical facts" of the injury and its cause. *Torres II*, 612 F. App'x at 40. Batista was subjected to a battery of examinations, but by August 26, 2020, she was not yet aware of the "critical facts" of her injury. In the Court's view, the earliest possible accrual date would be September 9, 2020, when Dr. Sookhan explained the biopsy results to her. The diagnosis itself is one of the "critical facts" of her injury—prior to September 9, she had a woefully incomplete picture of her medical condition. The biopsy could well have revealed nothing but a cyst.

The Court notes some disagreement between the parties as to the exact date of diagnosis—Plaintiffs allege that Batista learned of her condition on September 9, 2020, whereas Defendant suggests in passing that she was diagnosed on August 26, 2020.[45] At least

---

[44] Def. Mem. at 21.

[45] Def. Mem. at 11.

one medical record[46] lists August 26 as the date of diagnosis, but the record of Batista's visit to the Breast and Oncology Center on September 9, 2020, lends support to Plaintiffs' position. In Dr. Sookhan's words, Batista was "overwhelmed today after receiving the news of her diagnosis."[47] Because the Court draws all reasonable inferences in Plaintiffs' favor at this stage in the litigation, *see Warren*, 744 F.3d at 843, it assumes that Batista received her diagnosis on September 9, 2020.

Other courts in the Circuit have reached similar conclusions. In *Picarella*, the court found that, at the earliest, the plaintiff's claims accrued "when he learned the results of his biopsy, indicating that he had prostate cancer[.]" 2024 WL 1435744, at *6. And in *Carroll v. United States*, the court also pegged the accrual date to the date of diagnosis. No. 21-CV-1197, 2023 WL 5380433, at *3 (N.D.N.Y. Aug. 21, 2023). Both plaintiffs alleged that VA doctors failed to diagnosis them, and though the instant case involves a failure to refer, not a failure to diagnose, these plaintiffs all experienced similar injuries: a disease that progressed unchecked due to alleged malpractice. The question before the Court is simply when Batista possessed the "critical facts" of her injury and its cause. Just like the *Picarella* and *Carroll* plaintiffs, Batista only acquired those critical facts at the time of diagnosis.[48] The Government contends

---

[46] Gov. Ex. F, ECF No. 22, at 26.

[47] Gov. Ex. C at 15.

[48] Compare Batista's situation to the plaintiff's circumstances in *Torres I*. In that case, the plaintiff argued that she did not know the "critical facts" of her injury and its cause until two months after her official diagnosis. 2014 WL 4805035, at *6. Not only did the court find that her severe symptoms and deteriorating condition were "critical facts" at her disposal, but it noted that the plaintiff did not acquire "any additional information" after her diagnosis. *Id.* Here, however, Batista acquired new information between June 2020 and September 9, 2020. To wit, she acquired a diagnosis. In addition, she did not suffer from new and severe symptoms that could have alerted her to the cancer. She thought that the mass might have grown, but that alone is not the sum total of the "critical facts" of her injury.

that "[a] claim based on injury suffered through delayed referral can accrue no later than the moment that the late referral actually occurred."[49] But it offers no law in support of that assertion, and the Court, finding none, declines to hold this claim to a more exacting standard than the standard applied to a "failure to diagnose" claim. *See Augustine*, 704 F.2d 1074 ("In [cases involving a failure to diagnose or treat], it is only when the patient becomes aware or . . . should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued for the purposes of section 2401(b)."); *see also Machart v. Arvin Cmty. Health Ctr.*, No. 11-CV-341, 2013 WL 57702, at *3 (E.D. Cal. Jan. 4, 2013) (reasoning that a plaintiff's claim accrued on the date of diagnosis where he alleged that clinic employees failed to refer him to a specialist).

Finally, the Court merely finds that the earliest possible date of accrual was September 9, 2020—it does not conclude that the claim accrued on that date. Under the diligent-discovery rule, Plaintiffs' claim accrued when they were told or "had reason to suspect" both the existence of the injury—here, the growth of the cancer—*and* its "relat[ion] in some way to the medical treatment" provided at StayWell. *Castillo*, 6565 F.3d at 142 (citing *Donely*, 518 F.3d at 180). The Court cannot conclude from the medical records and the complaint that Plaintiffs knew on September 9, 2020, that Alward should have referred Batista for further testing in September 2019. They may not yet have had reason to suspect that the cancer could have been diagnosed at an earlier date. The Court need not resolve this issue because, either way,

---

[49] Reply at 4.

Plaintiffs filed their administrative tort claim within the two-year window, as required by 28 U.S.C. § 2401(b). At the earliest, that window closed on September 9, 2022.[50]

### C.    Defendant's Other Arguments

The Government makes two additional arguments in favor of dismissal. First, it contends that Plaintiffs cannot assert a claim under the FTCA for any acts committed by Dr. Sookhan, who was never employed by StayWell.[51] In response, Plaintiffs concede that they named Dr. Sookhan in error. The Court interprets this concession to mean that Plaintiffs now base their claims *only* on Alward's conduct.

Second, the Government asserts that Plaintiffs have failed to connect Alward's conduct to the diagnosis, treatment, and management of Batista's cancer.[52] Plaintiffs do indeed allege in their complaint that the United States "failed to properly diagnose, manage and treat [Batista] for right breast carcinoma." To the extent that the Government argues that Alward was not involved in diagnosis, management, or treatment of the cancer itself, Plaintiffs appear to have conceded the point. They do not dispute that Alward was neither qualified to diagnose the carcinoma nor involved in Batista's care after August 2020, when she issued the relevant referrals.[53] However, to the extent that the Government asks the Court to dismiss the complaint in its entirety on this basis, the Court declines the invitation. On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must determine whether a

---

[50] The Court does not address the parties' positions on equitable tolling. (Pl. Opp. at 23.) It need not because it concludes that Plaintiffs timely filed their administrative tort claim.

[51] Def. Mem. at 20.

[52] *Id.* at 26–27.

[53] *Id.* at 26–27.

complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The complaint has its errors, but it contains enough factual matter for Plaintiffs to make out a medical practice claim under the FTCA. As evidenced by the briefing, Defendant had no trouble identifying the crux of the complaint: Alward's failure to refer Batista for further testing in 2019 and her decision to order further testing on a non-urgent basis in 2020.

### D.    Leave to Amend

Plaintiffs ask the Court for leave to amend their complaint and remove allegations against Dr. Sookhan. Defendant opposes this request, characterizing it as a complete reversal of their prior position. As Defendant points out, Plaintiffs expressly told the Court during the pre-filing conference that they did not seek leave to amend their complaint.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, which governs Plaintiffs' request[54] in these circumstances, "[t]he court should freely give leave when justice so requires." "'[T]he only grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (alteration in original) (quoting *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). "[M]ere delay" cannot justify a denial of such a motion, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008), but a court may deny a request "made after an inordinate delay," if "no satisfactory

---

[54] Plaintiffs suggest that they may amend their pleading "as a matter of course" under Rule 15(a)(1) because Defendant has not yet filed its answer. But Rule 15(a)(1) allows an amendment as a matter of course no later than 21 days after service or 21 days after service of a responsive pleading *or* 21 days after service of a motion under Rule 12(b). Defendant filed its motion to dismiss under Rule 12(b)(6) on July 19, 2024. Because Plaintiffs filed their opposition on September 17, 2024, more than twenty-one days later, they make their request too late.

explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

In the present case, the Court sees no evidence of bad faith or dilatory motive. The final factor, futility, also has little bearing on the present dispute—the Court has rejected Defendant's arguments in favor of dismissal. *See Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.") (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 1992 (2d Cir. 2012)). In other words, the only relevant factor seems to be undue delay. In April 2024, Plaintiffs could not "see the need to amend,"[55] but almost five months later, in their opposition briefing, Plaintiffs asked for permission to amend the complaint should the Court deny Defendant's motion to dismiss. This request comes almost a year after Plaintiffs filed the complaint. Even assuming for argument's sake that Plaintiffs have "unduly" delayed the litigation, the Court concludes that the proposed amendment would not prejudice Defendant at this time. *See Cresswell*, 922 F.2d at 72. Plaintiffs wish to drop their allegations against Dr. Sookhan without bringing any new allegations. In addition, the parties have not yet initiated discovery, and the Court stayed their obligations under Local Rule 26(f). The Court will allow Plaintiffs to file an amended complaint that removes all allegations against Dr. Sookhan.

---

[55] Pre-filing Conference Transcript, ECF No. 27, at 5:24.

IV.    <u>**CONCLUSION**</u>

For these reasons, the Court **denies** Defendant's motion to dismiss (ECF No. 20). Plaintiffs shall file an amended complaint on the docket on or before **April 9, 2025**. Defendant shall then file an answer to the amended complaint within **fourteen days**.

Finally, the Court lifts the stay on the parties' Rule 26(f) obligations. Parties shall file their Rule 26(f) report on or before **April 16, 2025**.

**SO ORDERED.**

Hartford, Connecticut
March 26, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge